ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
40 Wall Street, Suite 2833
New York, New York 10005
(212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

LAVERNE CHISHOLM-PRICHER,                    :

                        Plaintiff,           :

        -against-                            :

ABM AVIATION INC., MIAH BULBUL,   :
RAY SUAREZ, ANTONIA BATISTA, and
JOSE VARGAS,                                 :

                        Defendants.   :

-------------------------------------------------------X

**Docket No.:**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Laverne Chisholm-Pricher ("Pricher"), by and through her attorneys, Robert

Wisniewski P.C., as and for her Complaint against Defendants ABM Aviation Inc. ("ABM" or

"Corporate Defendant"), Miah Bulbul ("Bulbul"), Ray Suerez ("Suarez") and Antonia Batista

("Batista") (collectively, "Individual Defendants") (Corporate Defendant and Individual

Defendants collectively referred to as "Defendants"), states as follows:

### NATURE OF THE ACTION

1.        Plaintiff brings this action against the Corporate Defendant for discrimination

and hostile work environment based on race, color, and/or national origin, and for retaliation,

including but not limited to termination of Plaintiff's employment, for her opposition to and

1

complaint of said discrimination and hostile work environment in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII").

2.        Plaintiff also asserts claims against *all* Defendants under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., ("ADEA") for

discrimination based on age; Section 1981 of the Civil rights Act of 1866, 42 U.S.C. § 1981

("Section 1981") for discrimination and hostile work environment based on race and ethnicity

and for retaliation, including but not limited to termination of Plaintiff's employment, for her

opposition to and complaint of said discrimination and hostile work environment; and under

New York Executive Law § 296 ("New York Human Rights Law") and the New York City

Charter and Administrative Code § 8-107 ("New York City Human Rights Law") for

discrimination and hostile work environment based on age and national origin, and for retaliation

based on Plaintiff's opposition to and complaint of said discrimination and hostile work

environment.

3.        The Individual Defendants are directors, officers, and/or managers of the

Corporate Defendant, an airport facilities management company.

4.        Plaintiff was employed by Defendants as an Assistant Manager and Lead

Supervisor of janitorial services from August of 2010 until her termination on January 8, 2019.

## JURISDICTION AND VENUE

5.        This Court has personal jurisdiction over the Defendants because Individual

Defendants are domiciled within the State of New York and because Corporate Defendant is

subject to this Court's personal jurisdiction pursuant to CPLR 302(a), New York's long arm

statute.

2

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the ADEA and Title VII. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because those claims are intimately related to Plaintiff's federal claims and form part of the same case or controversy.

7.      This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district.

## THE PARTIES

8.      Plaintiff Pricher, a former employee of the Corporate Defendant, is a sixty-year-old black African American female who resides in the State of New York, County of Kings.

9.      Corporate Defendant ABM is a company engaged in the provision of airport facility management services to airports around the country, including the John F. Kennedy Airport in Far Rockaway, New York (the "JFK Airport"), where Plaintiff worked.

10.     ABM, at all relevant times, is and has been a foreign business corporation duly organized under, and existing by virtue of, the laws of the State of Georgia and having its principal place of business in Texas.

11.     ABM is authorized to do business in the State of New York and has designated an agent to receive process in the State of New York.

12.     At all relevant times, Defendant Bulbul, a light-skinned male of Middle Eastern descent, served as ABM's General Manager of Terminal 4 at the JFK Airport and had the authority to set the terms and conditions of Plaintiff's employment and played a direct role in all or some of the discriminatory and retaliatory acts set forth below.

3

13.     At all relevant times, Defendant Suarez, a light-skinned Hispanic male, served as ABM's Project Manager of Terminal 4 at the JFK Airport and had the authority to set the terms and conditions of Plaintiff's employment and played a direct role in all or some of the discriminatory and retaliatory acts set forth below.

14.     At all relevant times herein, Defendant Batista, a light-skinned Hispanic female, served as ABM's Afternoon Assistant Manager of Terminal 4 at the JFK Airport and had the authority to set the terms and conditions of Plaintiff's employment and played a direct role in all or some of the discriminatory and retaliatory acts set forth below.

15.     At all relevant times herein, Defendant Vargas, a light-skinned Hispanic male, served as ABM's Morning Assistant Manager of Terminal 4 at the JFK Airport, and had the authority to set the terms and conditions of Plaintiff's employment and played a direct role in all or some of the discriminatory and retaliatory acts set forth below.

16.     At all relevant times, ABM employed fifteen (15) or more employees, and thus, was Plaintiff's "employer" within the meaning of that term in the ADEA, Title VII, New York Human Rights Law, New York City Human Rights Law and Section 1981.

17.     At all times herein, Individual Defendants acted for and on behalf of Corporate Defendant, with the power and authority vested in them as managers, agents and employees, and acted in the course and scope of their duty and function as agents, employees, and managers of the Corporate Defendant.

18.     At all relevant times, Individual Defendants aided and abetted in, ratified and condoned, and/or played a direct role in:

      a.  Subjecting Plaintiff to inferior and disparate treatment on the basis of Plaintiff's age, race, color, and/or national origin (60-year-old black African American);

4

b.  Subjecting Plaintiff to a hostile work environment on the basis of Plaintiff's race, color, and/or national origin (black African American); and

c.  Subjecting Plaintiff to inferior and disparate treatment on the basis that Plaintiff complained of and opposed the aforementioned unlawful race, color, and/or national origin discrimination and hostile work environment;

d.  Terminating Plaintiff's employment for Corporate Defendant based on Plaintiff's age, race, color, and/or national origin (60-year-old black African American); and

e.  Terminating Plaintiff's employment for Corporate Defendant on the basis that Plaintiff complained of and opposed the aforementioned race, color, and/or national and national origin discrimination and hostile work environment.

## PREREQUISITES

19.    Plaintiff has filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and is in receipt of the Notice of Right to Sue ("Right-to-sue Letter").

## JURY DEMAND

20.    Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

***Facts Relating to Plaintiff's Employment History with Defendants and Defendants' Discriminatory Promotion Practices***

21.    ABM is a nationwide provider of airport facility management services.

22.    Most of ABM's employees working in janitorial services at Terminal 4 are light-skinned, like Defendant Bulbul, and Hispanic like Defendants Suarez, Batista, and Vargas.

5

23.     Plaintiff is a sixty-year-old African American female; Plaintiff's skin color is black.

24.     Plaintiff was employed by ABM from August 2010 to January 8, 2019. From August 2010 to September 17, 2014, Plaintiff served as ABM's Assistant Manager of janitorial services at Terminals 2 and 3. From September 17, 2014 to the date of her termination on January 8, 2019, Plaintiff served as ABM's Lead Supervisor at Terminal 4.

25.     At all relevant times, Plaintiff's job performance was more than satisfactory and Plaintiff was well-qualified for the Assistant Manager position that she was hired to perform.

26.     Prior to working for ABM, Plaintiff had served as a cleaner and supervisor of janitorial services for fourteen (14) years at two other airport facility management companies.

27.     Plaintiff's duties as ABM's Assistant Manager of janitorial services at Terminals 2 and 3 included, among others, scheduling, payroll, and direct oversight of the work of three (3) supervisors, including Defendant Batista, and fifty (50) cleaners.

28.     Throughout her tenure as Assistant Manager, Plaintiff reported directly to ABM's General Manager.

29.     On or about September 14, 2014, ABM lost its contracts with Terminals 2 and 3. As a result, Plaintiff was demoted from the position of Assistant Manager to a position of Lead Supervisor at Terminal 4.

30.     Plaintiff's 2014 demotion entailed a salary reduction of $6.00 per hour.

31.     As Lead Supervisor of Terminal 4, Plaintiff also lost her supervisory duties over other supervisors and became a direct report of ABM's General Manager, Project Manager, and two Assistant Managers for Terminal 4.

32.     Defendants justified Plaintiff's demotion on the grounds that no Assistant Manager positions were available at any of the terminals serviced by ABM. However, much to Plaintiff's chagrin, Defendant Batista, who had theretofore served as a supervisor at Terminals 2 and 3 and had been Plaintiff's subordinate, was among several light-skinned Hispanic employees who were awarded promotions at Terminal 4.

33.     Particularly the promotion of Batista was shocking to Plaintiff. Not only was Batista incompetent in Plaintiff's opinion, but she also barely spoke English and upon information and belief, had not previously served in a managerial role.

34.     Following her 2014 demotion, Plaintiff unsuccessfully sought to be reinstated and/or promoted back to the Assistant Manager position, which she had been initially hired to hold.

35.     Soon after the demotion, Plaintiff inquired about the Assistant Manager position but Guy Rodriguez, ABM's then General Manager, told Plaintiff that would not be able to handle the job.

36.     Further, during the summer of 2016, Plaintiff actually applied and interviewed for the Assistant Manager position at Terminal 4. Within thirty (30) minutes of Plaintiff's interview, ABM notified Plaintiff that an outside hire, Jose Vargas, a Hispanic male in his thirties with no prior airport facilities management experience, received the position.

37.     As compared to other more qualified non-Hispanic employees of ABM such as Plaintiff, Vargas was patently underqualified for the position of Assistant Manager.

38.     From the time of her demotion to January 8, 2019, the day of her termination, Plaintiff observed Defendants promote at least three (3) other Hispanic individuals to supervisory and managerial positions: Jesvelle Lopez, Samuel Pineda, and Joaquin Rodrigez.

7

39.      Upon information and belief, Defendants also awarded promotions to younger individuals in their twenties and thirties over their more qualified and experienced counterparts like Plaintiff.

40.      Individuals who were allowed to climb Defendants' ranks: Jesvelle Lopez, Samuel Pineda, and Joaquin Rodrigez were all less than forty (40) years old.

41.      Indeed, Plaintiff was made to train some of the young Hispanic employees like Joaquin Rodriguez who were then quickly promoted to supervisory and managerial positions.

42.      Despite Plaintiff's efforts to be promoted, and despite her experience and unquestionable loyalty to ABM, Plaintiff was never awarded a promotion by Defendants because of her age, race, color, and/or national origin.

***Facts Related to Defendants' Disparate Treatment of Black Employees***

43.      In addition to maintaining the unlawful practice of awarding promotions to underqualified Hispanics over the more qualified non-Hispanics, Defendants also treated their Hispanic employees better than their non-Hispanic workers, particularly blacks.

44.      While Defendants' Hispanic employees were routinely granted the days off and vacation days they requested and received extensions of their vacation periods on account of having to travel to the countries of their provenance, their black counterparts were frequently denied similar requests.

45.      Most egregiously, Defendants punished their black employees for calling out of work by either giving them "write-ups" or immediately assigning them to work in undesirable areas of the terminal – i.e., areas that were busy and required a lot of cleaning or areas at the remote end of the terminal far away from designated break areas and food stations.

46.     In March 2018, Plaintiff herself received her first ever written warning after she called out of work to tend to the affairs of her recently deceased sister.

47.     Further, Defendants did not apply their company rules and policies to all employees equally and selectively disciplined black employees.

48.     On several occasions, Defendants forced Plaintiff to issue unwarranted write-ups to black employees for transgressions that went unpunished if done by Hispanic employees.

49.     On one such occasion, Defendant Bulbul pressured Plaintiff to issue a write-up to Rodney, a black employee assigned to work outdoors in sub-zero temperatures, after Rodney had come into the terminal to make himself warm.

50.     Considering that Rodney was well within his rights to take a fifteen-minute break and that he obtained Plaintiff's express permission to take the break, Plaintiff refused to issue the write-up. Upon information and belief, Bulbul sought out another supervisor who then issued the write-up to Rodney.

51.     Hostility towards black employees and outright favoritism of Hispanic employees by Defendants permeated Plaintiff's day-to-day interactions with Defendants.

52.     While Batista openly flaunted her friendly relations with her Hispanic subordinates by allowing them to spend time in her office, eat with her, and even braid her hair and give her massages while "on the clock," Batista largely ignored her black subordinates.

53.     At all relevant times, Batista solely sought out Plaintiff when she needed help drafting, editing, and/or proofreading her emails for spelling errors – evidently a shortcoming she had not overcome prior to accepting her promotion.

9

54.     Plaintiff could not countenance such workplace disparity and on occasions too numerous to list, she complained to Batista about the unfair treatment of non-Hispanic employees received at the hands of the Defendants.

55.     Each time Plaintiff complained, Batista denied any unequal treatment and shrugged off Plaintiff's protests.

56.     In or about the beginning of 2018, it became apparent to Plaintiff that like the black employees she had previously advocated for, she too had become Defendants' target for selective discipline and censure.

57.     Thus, in March 2018, Plaintiff received her first ever written warning from Vargas and Suarez after calling out of work to tend to the affairs of her recently deceased sister. Plaintiff refused to sign that warning.

58.     Two months later, in May 2018, Plaintiff was again disciplined by Bulbul and Suarez for tardiness. While Plaintiff admits to having arrived to work late on several occasions, she avers that Defendants' Hispanic employees regularly arrived to work late but were not disciplined.

59.     Fearful of losing her job, Plaintiff never again arrived to work late after she received the warning.

60.     On or about November 25, 2018, Plaintiff took a week-long vacation. During her absence, supervisor Mann covered Plaintiff's assigned duties.

61.     While on vacation, Plaintiff was contacted by telephone by ABM's employees – Sherry Bannister from customs and subsequently, supervisor Mann – who sought Plaintiff's guidance regarding an incident of insubordination by a Hispanic cleaner, Rafaela who had refused to clean a particular area of the terminal.

10

62.      Upon Plaintiff's return from vacation on November 30, 2019, Defendants Bulbul, Suarez, and Batista set up a meeting in which they admonished Plaintiff for having discharged her work duties while on vacation and presented her with a performance improvement plan ("PIP") whereby Plaintiff was to report daily to Suarez regarding the completion of her duties during every shift.

63.      Plaintiff was dismayed and humiliated at being placed on the PIP, as she felt that her work performance never changed over the course of her nearly decade-long tenure working for ABM.

64.      Upon information and belief, ABM created the PIP to punish Plaintiff for having provided supervisor Mann with guidance that resulted in more work for the Hispanic cleaner Rafaella.

65.      Unsurprisingly, Defendants never followed up on Plaintiff's progress with regard to the bogus PIP. Instead, they terminated Plaintiff's employment at the nearest opportunity.

66.      Specifically, in or about mid-December 2018, two of Plaintiff's subordinates, cleaners Gwendolyn Waldo ("Waldo") and Jamie Hernandez ("Hernandez"), a Hispanic male, got into an altercation whereby the hearing-impaired Hernandez was screaming uncontrollably and comporting himself in an aggressive manner. Hernandez had previously received two oral warnings from Plaintiff for engaging in inappropriate workplace conduct.

67.      To diffuse the situation, Plaintiff removed her subordinates to Batista's office where Batista was present.

11

68.         While in Batista's office, Hernandez verbally and physically attacked Plaintiff by getting extremely close to Plaintiff, screaming, and pointing his finger in her face. When Plaintiff called Batista for help, Batista stood idly by and refused to act or reprimand her protégé.

69.         Afraid and humiliated, Plaintiff left the office and resolved to seek help with Batista's higher ups. That evening, Plaintiff emailed Bulbul, ABM's General Manager for Terminal 4, about Batista's failure to de-escalate Hernandez's behavior and requested a meeting between Batista, Hernandez, Waldo, Bulbul and herself. Bulbul never responded to Plaintiff's email.

70.         Several days later, Plaintiff placed a follow-up telephone call to Bulbul to inquire about the proposed meeting. In that call, Bulbul stated that Human Resources ("HR") was conducting an investigation and would shortly notify Plaintiff of a meeting.

***Facts Related to Defendants' Termination of the Plaintiff***

71.         In or around the first week of January 2019, HR and Bulbul held the first investigatory meeting with Plaintiff. However, HR and Bulbul did not inquire into the incident that transpired in Batista's office two weeks before.

72.         Instead, Plaintiff was questioned about any sexual harassment exhibited by ABM's employees. Plaintiff recounted to Bulbul that she had previously issued two verbal warnings to Hernandez for engaging in inappropriate horseplay with a female cleaner and for alleged unwanted touching of a male cleaner reported to Plaintiff by Waldo.

73.         On January 8, 2019, Plaintiff was summoned to a second investigatory meeting by HR and Bulbul. In that second meeting, Bulbul made a number of absurd and patently false accusations directed at Plaintiff: that Plaintiff ignored Hernandez's harassment by other employees, that Plaintiff had disseminated gossip that Hernandez was HIV-positive, that

12

Plaintiff was photographed lounging in an authorized area of the airport, that Plaintiff had left work early without Batista's permission on January 2, 2020, and that Plaintiff should have issued written and not verbal warnings to Hernandez in connection with his prior misconduct. Finally, Bulbul presented Plaintiff with two (2) write-ups for failing to document the "sexual harassment" involving Hernandez and for leaving early without authorization on January 2, 2019.

74.      Based on those write-ups, Bulbul informed Plaintiff that she was terminated effective immediately.

75.      Defendants' disciplinary write-ups were pretextual. In fact, Plaintiff was disciplined and subsequently terminated because she was an outspoken older black African American female.

76.      Upon information and belief, when Plaintiff was terminated, Bulbul reassigned Seheda, a black supervisor, from the more desirable morning shift to Plaintiff's afternoon shift further commenting that Seheda was a "perfect fit for the second shift," because "all black supervisors work the afternoon shift."

77.      As set forth above, Defendants discriminated against Plaintiff on the basis of her age, race, color, and/or national origin and for her opposition of said discrimination by denying Plaintiff opportunities for compensation and advancement, subjecting Plaintiff to a hostile work environment and selective discipline, and finally, terminating Plaintiff's employment with ABM.

78.      As a result of Defendants' unlawful discriminatory and harassing acts against Plaintiff, Plaintiff has, and will likely continue to, suffer significant economic consequences, including lost back and front wages, loss of self-esteem, as well as physical sickness and/or emotional distress.

79.     As a result of Defendants' unlawful discriminatory and harassing acts against

Plaintiff, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good

name and reputation.

80.     As a result of Defendants' unlawful discriminatory and harassing acts against

Plaintiff, Plaintiff has suffered and continues to suffer severe and lasting embarrassment,

humiliation and anguish, and other incidental and consequential damages and expenses.

81.     Defendants' actions were so outrageous, malicious and wanton, and were

done with reckless indifference to Plaintiff's protected civil rights that they must be punished and

deterred through an award of significant punitive damages.

82.     Defendants' unlawful discriminatory and harassing acts against Plaintiff were

intentional and in violation of the ADEA, Title VII, New York Human Rights Law, New York

City Human Rights Law and Section 1981.

### FIRST CLAIM FOR RELIEF
### Discrimination Based on Age Under the ADEA
### Against All Defendants

83.     Plaintiff repeats and realleges each and every previous allegation as if fully set

forth herein.

84.     Plaintiff is a qualified individual over the age of 40.

85.     The ADEA § 623(a)(1) makes it unlawful for an employer "to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment because of such individual's age."

86.     Defendants discriminated against Plaintiff on the basis of her age in violation

of the ADEA by denying her the same terms and conditions of employment available to

employees who are not over forty (40) years old, including, but not limited to, subjecting

14

Plaintiff to disparate working conditions and compensation because she is over forty (40) years old, and ultimately terminating her from employment at the JFK Airport.

87.     Defendants are liable for said discrimination against Plaintiff because it was created and fostered by management.

88.     The discrimination against Plaintiff was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants.

89.     As a direct and proximate result of said discrimination Plaintiff suffered and continues to suffer actual damages, in forms including without limitation future wages, as well as mental anguish, pain, and suffering.

90.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the ADEA.

### SECOND CLAIM FOR RELIEF
### Discrimination Based on Age Under the New York Human Rights Law
### <u>Against All Defendants</u>

91.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

92.     Plaintiff is a qualified individual over the age of 40.

93.     New York Executive Law § 296 (1) provides that, "It shall be an unlawful discriminatory practice "For an employer ... because of an individual's age...to discriminate against such person in compensation or in terms, conditions or privileges of employment."

94.     Defendants discriminated against Plaintiff on the basis of her age in violation of the ADEA by denying her the same terms and conditions of employment available to employees who are not over forty (40) years old, including, but not limited to, subjecting

15

Plaintiff to disparate working conditions and compensation because she is over forty (40) years old, and ultimately terminating her from employment at the JFK Airport.

95.    Defendants are liable for said discrimination against Plaintiff because it was created and fostered by management.

96.    The discrimination against Plaintiff was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants.

97.    Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

98.    Individual Defendants engaged and continue to engage in unlawful discriminatory practices in violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

99.    As a result of Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

100.    Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 296.

### THIRD CLAIM FOR RELIEF
### Discrimination Based on Age Under the New York City Human Rights Law
### <u>Against All Defendants</u>

101.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

102.    Plaintiff is a qualified individual over the age of 40.

103.     The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice "For an employer ... because of an individual's age ... to discriminate against such person in compensation or in terms, conditions or privileges of employment."

104.     Defendants discriminated against Plaintiff on the basis of her age in violation of the ADEA by denying her the same terms and conditions of employment available to employees who are not over forty (40) years old, including, but not limited to, subjecting Plaintiff to disparate working conditions and compensation because she is over forty (40) years old, and ultimately terminating her from employment at the JFK Airport.

105.     Defendants are liable for said discrimination against Plaintiff because it was created and fostered by management.

106.     The discrimination against Plaintiff was a result of intentional actions by Defendants, deliberate indifference by Defendants, and/or the result of Defendants.

107.     The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

108.     Individual Defendants engaged and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

109.     As a result of Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

110.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 8-107.

### FOURTH CLAIM FOR RELIEF
**Discrimination and Hostile Work Environment based on Race, Color, and/or National Origin Under Title VII**
<u>**Against Corporate Defendant**</u>

111.     Plaintiff repeats and realleges each and every allegation previously set forth.

112.     When employed by Defendants, Plaintiff was an employee within the meaning of Section 2000e(f) of Title VII.

113.     Corporate Defendant was an employer within the meaning of Section 2000(e)(b) of Title VII.

114.     Section 2000e-2(a) of Title VII makes in unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... race, color, or national origin."

115.     Corporate Defendant through its owners, directors, officers, managers and employees, engaged in discrimination on the basis of race, color, and/or national origin sufficient to alter the terms and conditions of Plaintiff's employment.

116.     Corporate Defendant discriminated against Plaintiff by treating her differently and less favorably than its Hispanic employees based on her black race and skin color and her African American national origin by subjecting her, among other things, to disparate working conditions and compensation, discriminatory disciplinary procedures, and discriminatory termination of her employment solely because of her race, color, and/or national origin in violation of Section 2000e-2(a) of Title VII.

117.     Corporate Defendant also unlawfully discriminated against Plaintiff on the basis of her race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

118.     By virtue of the acts complained of herein, the hostile work environment at Terminal 4 of the JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

119.     Corporate Defendant is liable for the discrimination and hostile work environment against Plaintiff because it was created and fostered by their owners, directors, officers, managers, and/or because the Corporate Defendant did not take adequate steps to prevent or address instances of national origin discrimination.

120.     Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiff's rights.

121.     As a result of Corporate Defendant's discrimination and hostile work environment, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

122.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII.

### FIFTH CLAIM FOR RELIEF
**Discrimination and Hostile Work Environment Based on Race, Color and/or National Origin Under the New York Human Rights Law**
**<u>Against all Defendants</u>**

123.     Plaintiff repeats and realleges each and every allegation previously set forth.

124.     New York Executive Law § 296(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's ... race, color, or national origin ... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

125.     Defendants discriminated against Plaintiff by treating her differently and less favorably than its Hispanic employees based on her black race and skin color and her African American national origin by subjecting her, among other things, to disparate working conditions and compensation, discriminatory disciplinary procedures, and discriminatory termination of her employment solely because of her race, color, and/or national origin in violation of Section 296(1) of New York Executive Law.

126.     Defendants also unlawfully discriminated against Plaintiff on the basis of her race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

127.     By virtue of the acts complained of herein, the hostile work environment at Terminal 4 of the JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

128.     Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiff's rights.

129.     Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

20

130.      Individual Defendants engaged and continue to engage in unlawful discriminatory practices in violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

131.      As a result of Defendants' discrimination and hostile work environment, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

132.      Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 296.

## SIXTH CLAIM FOR RELIEF
### Discrimination and Hostile Work Environment Based on Race, Color and/or National Origin Under the New York City Human Rights Law
### <u>Against all Defendants</u>

133.      Plaintiff repeats and realleges each and every allegation previously set forth.

134.      The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived ... national origin ... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

135.      Defendants discriminated against Plaintiff by treating her differently and less favorably than its Hispanic employees based on her black race and skin color and her African American national origin by subjecting her, among other things, to disparate working conditions and compensation, discriminatory disciplinary procedures, and discriminatory termination of her

21

employment solely because of her race, color, and/or national origin in violation of Section 296(1) of New York Executive Law.

136.    Defendants also unlawfully discriminated against Plaintiff on the basis of her national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

137.    By virtue of the acts complained of herein, the hostile work environment at Terminal 4 of the JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

138.    Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiff's rights.

139.    The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

140.    Individual Defendants engaged and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

141.    As a result of Defendants' discrimination and hostile work environment, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

142.    Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 8-107.

22

## SEVENTH CLAIM FOR RELIEF
**Discrimination and Hostile Work Environment Based on Race and Ethnicity
Under Section 1981
<u>Against all Defendants</u>**

143.      Plaintiff repeats and realleges each and every allegation previously set forth.

144.      Section 1981 Of the Civil rights Act of 1866, provides, in pertinent part, that

"[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make

and enforce contracts … as is enjoyed by white citizens …" This section thus outlaws

discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a

contractual relationship, and has been interpreted to prohibit race discrimination in hiring and

employment.

145.      Defendants discriminated against Plaintiff by treating her differently and less

favorably than their Hispanic employees based on her black race and skin color and her African

American national origin by subjecting her, among other things, to disparate working conditions

and compensation, discriminatory disciplinary procedures, and discriminatory termination of her

employment solely because of her race, color, and/or national origin in violation of Section 1981.

146.      This discrimination was a result of intentional actions by Defendants,

deliberate indifference by Defendants, and/or the result of Defendants maintaining a practice that

has a disparate impact on their black employees, including Plaintiff, namely a practice that

denied their non-Hispanic employees opportunities for compensation and advancement.

147.      Defendants also unlawfully discriminated against Plaintiff on the basis of her

race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise

failing to prevent or to remedy a hostile work environment.

23

148.     By virtue of the acts complained of herein, the hostile work environment at Terminal 4 of the JFK Airport was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

149.     Corporate Defendant is liable for the discrimination and hostile work environment against Plaintiff because it was created and fostered by their owners, directors, officers, managers, and/or because the Corporate Defendant did not take adequate steps to prevent or address instances of national origin discrimination.

150.     As a result of Defendants' discrimination and hostile work environment, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

151.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981.

**EIGHTH CLAIM FOR RELIEF**
**Retaliatory Discrimination and Hostile Work Environment Based on Race, Color, and/or National Origin Under Title VII**
**<u>Against Corporate Defendant</u>**

152.     Plaintiff repeats and realleges each and every allegation previously set forth.

153.     Corporate Defendant retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for her opposition to and complaint against Corporate Defendant's discriminatory practices, and (ii) terminating Plaintiff's employment shortly after she made her

protected complaints to Defendants. Such retaliation was inflicted subsequent to and in direct connection with Plaintiff's complaint of race, color, and/or national origin discrimination.

154.     As a result of Corporate Defendant's retaliatory conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

155.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Title VII.

### NINTH CLAIM FOR RELIEF
**Retaliatory Discrimination and Hostile Work Environment Based on Race, Color, and/or National Origin Under the New York Human Rights Law**
**<u>Against all Defendants</u>**

156.     Plaintiff repeats and realleges each and every allegation previously set forth.

157.     Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for her opposition to and complaint against Defendants' discriminatory practices, and (ii) terminating Plaintiff's employment shortly after she made her protected complaints to Defendants. Such retaliation was inflicted subsequent to and in direct connection with Plaintiff's complaint of national origin discrimination.

158.     Individual Defendants engaged and continue to engage in unlawful discriminatory practices in violation of the New York Executive Law § 296 (6) by aiding, abetting, inciting, compelling and coercing the above retaliatory conduct.

159.     As a result of Defendants' retaliatory conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

160.     Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of New York Human Rights Law.

### TENTH CLAIM FOR RELIEF
**Retaliatory Discrimination and Hostile Work Environment Based on Race, Color and/or National Origin Under the New York City Human Rights Law**
**<u>Against all Defendants</u>**

161.     Plaintiff repeats and realleges each and every allegation previously set forth.

162.     Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for her opposition to and complaint against Defendants' discriminatory practices, and (ii) terminating Plaintiff's employment shortly after she made his protected complaints to Defendants. Such retaliation was inflicted subsequent to and in direct connection with Plaintiff's complaint of national origin discrimination.

163.     The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

164.     Individual Defendants engaged and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

165.      As a result of Defendants' retaliatory conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

166.      Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law.

### ELEVENTH CLAIM FOR RELIEF
### Retaliatory Discrimination and Hostile Work Environment Based on Race and Ethnicity Under Section 1981
### Against all Defendants

167.      Plaintiff repeats and realleges each and every allegation previously set forth.

168.      Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for her opposition to and complaint against Defendants' discriminatory practices, and (ii) terminating Plaintiff's employment shortly after he made his protected complaints to Defendants. Such retaliation was inflicted subsequent to and in direct connection with Plaintiff's complaint of race and ethnicity discrimination.

169.      As a result of Defendants' retaliatory conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering and interest thereon.

170.      Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Section 1981.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary and/or economic damages;

C. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D. An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

E. An award of punitive damages; and

F. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
August 10, 2020

ROBERT WISNIEWSKI P.C.

By: _____
Robert Wisniewski
*Attorneys for Plaintiff*
40 Wall Street, Suite 2833
New York, NY 10005
(212) 267-2101

28